IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BSQUARE CORPORATION | § § § | |
| Plaintiff, | § § | C.A. No. 05-886-JJF |
| v. | § § | |
| DATA EVOLUTION CORPORATION | § § | |
| Defendant. | § § § § | |

**BSQUARE CORPORATION'S REPLY TO
COUNTERCLAIM OF DATA EVOLUTION CORPORATION**

Plaintiff BSQUARE Corporation ("BSQUARE") replies to the Counterclaim of Data Evolution Corporation ("Data Evolution") as follows:

**A. PARTIES**

1. Admitted that Data Evolution is a Delaware corporation. Admitted that Data Evolution sells computer hardware products to markets including healthcare and education. Admitted that Data Evolution sells the Clio computer, a tablet computer. BSQUARE lacks sufficient information to respond to the remaining allegations of this paragraph.

2. Admitted.

3. BSQUARE lacks sufficient information to respond to the allegations of this paragraph.

4. Admitted.

5. Admitted that during the fourth quarter of 2004 and the first quarter of 2005, BSQUARE suffered a revenue shortfall as a result of a decline in orders from its largest

customer, Cardinal Healthcare, which had provided 19% of BSQUARE's revenue in 2004. Admitted that on March 4, 2005, BSQUARE announced that Cardinal had discontinued its relationship with BSQUARE in favor of a competitor. Admitted that in a March 3, 2005 earnings conference call, Brian Crowley, BSQUARE's CEO, acknowledged that BSQUARE had underutilized engineers in it services, explaining: "Specifically, for the last several quarters, our service capacity has been underutilized due to lower than expected sales volumes. As billable hours and revenues increase, there should be little corresponding increase in service costs due to this capacity availability." Admitted that during the first half of 2005, BSQUARE was trying to replace the revenue lost from Cardinal and to increase the billable hours for its underutilized engineering staff. By way of further answer, because Cardinal was a licensing customer of BSQUARE, the loss of Cardinal as a customer was unrelated to BSQUARE's service business and the underutilization of its engineering staff. The last sentence is denied.

   6.  Admitted.

   7.  BSQUARE lacks sufficient information to respond to the allegations of this paragraph.

   8.  Admitted that BSQUARE provided estimates of the hours and dollars required to perform the development work. Denied that its version #4 of its Project Quote reflected any specific number of hours, and admitted that BSQUARE did provide a preliminary estimate for the project of 2,754 hours, which at a blended labor rate of $120 per hour, would cost Data Evolution $330,675. By way of further answer, the parties recognized that project estimates provided by BSQUARE were estimates only because of the uncertainty as to the full requirements of the project and the obsolescence of certain components of the Clio.

9.     BSQUARE lacks knowledge of what Data Evolution hoped.  Denied that BSQUARE ever <u>committed</u> to any completion date for the Clio.  Denied that by moving the date back, the next generation chip could be incorporated.  BSQUARE lacks sufficient information to respond to Data Evolution's subjective criteria for awarding the contract to BSQUARE.

10.    Admitted as to the date of agreement.  The Agreement speaks for itself as to its terms.

11.    The Agreement speaks for itself as to its terms.

12.    The Agreement speaks for itself as to its terms.

13.    The Agreement speaks for itself as to its terms.

14.    The Agreement speaks for itself as to its terms.

15.    The first two sentences are admitted.  As to the third sentence, the Agreement speaks for itself as to its terms.

16.    Denied.

17.    The Agreement speaks for itself as to its terms.

18.    The Agreement speaks for itself as to its terms.

19.    As to the first sentence, the Agreement speaks for itself as to its terms.  The second sentence is denied.

20.    The Agreement speaks for itself as to its terms.

21.    The Agreement speaks for itself as to its terms.

22.    The Agreement speaks for itself as to its terms.

23.    The Agreement speaks for itself as to its terms.

24.     The first sentence is denied. Admitted that there were increases in cost from the original estimates and extensions from the original schedule, but denied that these were attributable to any fault of BSQUARE.

25.     Admitted that BSQUARE designated Carlos Ribas as project manager. Denied that he was not a project manager by profession, but an engineer. Admitted that Mr. Ribos did not live near BSQUARE's principal place of business in Bellevue, Washington, but in San Jose, California. Admitted that Mr. Ribas put 383 billable hours into the project, that he then found another job and that he was no longer working on the project as of early February 2005. Denied that he did not provide advance notice to Data Evolution.

26.     Denied that in early January 2005 BSQUARE completed Phase 1 of the project, the feasibility and risk study of critical features (the "Feasibility Study"). Admitted that Change of Scope ("COS") 1 through 4 in January 2005 raised the BSQUARE labor cost to $385,200, representing 3210 billable hours. Denied that on February 14, 2005, BSQUARE proposed another $28,880 of additional labor costs, and that these additions were embodied in COS 5. Admitted that the additional 174 hours under COS 5 brought the New Project Total for "BSQUARE Labor only" to $406,080 for 3,384 hours.

27.     Admitted that when it tendered its invoice dated February 25, 2005, BSQUARE had already billed for 1,739.50 hours, totaling $208,740. Admitted that by March 7, 2005, BSQUARE was proposing an additional increase which would bring BSQUARE labor to 4,734 hours at a cost of $568,080. Admitted that this was $237,600 and 1,980 hours over BSQUARE's original bid amount; a 72% increase. By way of further answer, the COS agreed to by Data Evolution up to this date represented <u>additional</u> work and costs beyond the original scope of work requested by Data Evolution. Further, BSQUARE's "original bid amount" was a

preliminary estimation<u>, and the parties recognized that increases in the scope, cost and schedule would occur.</u>

28.     BSQUARE lacks knowledge of how Data Evolution felt.  Denied that Robert Sowah requested the meeting.  Admitted that a high-level meeting took place at BSQUARE on March 15, 2005, but by way of further answer, BSQUARE requested this meeting and Data Evolution repeatedly rescheduled the meeting.  Admitted that during the meeting, Mr. Sowah expressed Data Evolution's dissatisfaction with the increase in budget and push-back of the schedule.  Admitted that by then BSQUARE was quoting a completion date of May 13, 2005 for Phase 3 of the Clio only and had increased its estimate of the overall cost of the project to over $1 million.  By way of clarification, the $1 million estimate was for the <u>overall</u> cost of the project, not just BSQUARE's labor costs.

29.     BSQUARE lacks sufficient information to respond to the statement that in a budgetary chronology prepared for the March 10, 2005 meeting, BSQUARE asserted that a total of 4,734 hours would be needed to complete the project, an increase of 1,350 hours over the 3,3384 hours reflected in the total BSQUARE time under COS 5.  Denied that, in support of the purported need for increased hours, BSQUARE only cited "892 hours in Change of Scope Activities" and "110 hours misbid" – a total of 1,002.  BSQUARE lacks sufficient information to respond to the statement, even under BSQUARE's scenario, the hours should only have increased from 3,384 to 4,386, not 4,747, and the cost should have increased to $526,320, not $568,080.

30.     Admitted that in asserting that still more hours were needed, BSQUARE claimed that while the budget assumed 18 hours of project management time per week, the use of significantly more third-party suppliers would necessitate 10 additional engineering

manager/project manager ("EM/PM") hours per week. Admitted that BSQUARE claimed that 420 additional EM/PM hours were necessary. Admitted that even under BSQUARE's ever-longer schedule, the project was not to last an additional 42 weeks. By way of further answer, the 10 additional EM/PM hours per week were in addition to the then current 18 hours of PM time per week. Therefore, BSQUARE asserted that the estimated need for additional EM/PM hours per week was 28 hours (as of March 7, 2005). This additional project management time was required due to BSQUARE's assumption of additional responsibilities, including identifying and hiring additional suppliers. Denied that BSQUARE overstated the project management hours required.

31.    Admitted that it was agreed the COS 6 would be for a maximum of 1,192 hours. Admitted that this would increase the number of hours from 3,384 hours under COS 5 to 4,576 hours under COS 6. Admitted that this would increase the value of billable hours of BSQUARE from $406,080 under COS 5 to $549,120 under COS 6. Admitted that BSQUARE agreed to write down 510 hours so that a maximum of 682 additional hours would be billed to Data Evolution. Denied that the maximum total hours Data Evolution would pay for was 4,066, which at $120 per hour is a total cost of $487,920. By way of further answer, the increased hours and cost reflected in COS 6 was for work described in COS 6 only, and was not intended to reflect total hours and cost through completion of the project.

32.    BSQUARE lacks sufficient information to respond to Data Evolution's subjective statement that "Mr. Sowah made it clear at the March 15 meeting that Data Evolution did not want any more surprises". Admitted that Mr. Sowah specifically asked whether BSQUARE had accounted for all the work and if there were any additional dollars to be added to BSQUARE's portion. Denied that BSQUARE assured him that this was everything to completion. Admitted

that Mr. Sowah stated at the end of the meeting that he expected no additional costs. Denied that there were any "maximums" set forth in the Agreement – estimates of hours were estimates only. By way of further answer, Data Evolution executed two additional COS documents subsequent to COS 6.

33. Admitted that the agreement reached on March 15, 2005 was reflected in COS 6 dated March 16, 2005. The agreement speaks for itself as to its terms.

34. Admitted that Data Evolution specifically changed the proposed wording of COS 6 to indicate plainly that it would pay "up to" 682 additional BSQUARE hours for the COS tasks if those hours were necessary. Admitted that if the tasks contemplated by COS 6 were accomplished in less than 682 hours, then Data Evolution would only pay for the lesser number of hours actually needed.

35. COS 6 speaks for itself as to its terms. By way of further answer, the "New Project Total" was an estimate and Data Evolution agreed to pay BSQUARE for the time and materials expenses incurred. Denied that in COS 6, BSQUARE and Data Evolution agreed on a precise maximum number of additional hours for which Data Evolution would pay (682 hours) in order to have BSQUARE complete the project. COS 6 speaks for itself as to the terms on page 2.

36. Admitted.

37. Denied.

38. Admitted.

39. Denied.

40. Denied as to the estimate of additional hours presented to Data Evolution. Denied as to the statement "assuming, contrary to prior experience, that BSQUARE could actually complete the task and complete it in the number of hours promised."

41. BSQUARE lacks sufficient information to respond to this statement.

42. Denied that there was "slow performance" by BSQUARE. Denied that on May 12, 2005, Mr. Sowah informed BSQUARE that a representative of Exxon, which was interested in 14,000 Clios, was "blowing a gasket" because BSQUARE had not delivered a breadboard (i.e. development board) as promised.

43. BSQUARE lacks sufficient information to respond to the allegations of this paragraph.

44. Denied that there was ineptitude or tardiness on the part of BSQUARE. BSQUARE lacks sufficient information to respond to the remaining allegations of the first sentence of this paragraph. Admitted that BSQUARE knew of the critical trade show from the inception of the project and that it was a major driving force behind the scheduling. By way of further answer, the work to develop the prototype new products for the trade show was for a separate project (the Cathena product), and BSQUARE was on schedule to make delivery to Data Evolution in time for the trade show.

45. Admitted.

46. Admitted as to the first two sentences. Denied as to the last sentence that "Moore was surprised that the hardware platform, instead of appearing ready for delivery within weeks, appeared to be first pass hardware that was not packaged in an enclosure with possible cutouts for debug connectors". By way of further answer, Mr. Moore advised BSQUARE that he found the work product to be in the condition that he would have expected.

47. Admitted as to the first two sentences. BSQUARE lacks knowledge of Mr. Moore's opinion regarding the level of validation.

48. Admitted that BSQUARE produced to Moore a single page of tasks to complete Phase 3. By way of further answer, Mr. Moore only asked BSQUARE for a list of the software tasks that were remaining for Phase 3. BSQUARE lacks knowledge as to Mr. Moore's opinions. Denied that there deficiencies in BSQUARE's performance.

49. BSQUARE lacks knowledge as to Mr. Moore's opinions. Denied that BSQUARE had misevaluated the project as merely tweaking a working design.

50. The first sentence is admitted. Denied that BSQUARE ever represented what the project would cost.

51. Admitted that Data Evolution sent a letter on or about July 14, 2005. The contents of the letter speak for itself.

52. Admitted.

53. The notice speaks for itself as to its contents. Denied that it was overbroad or contrary to the parties' Agreement.

54. The notice speaks for itself as to its contents.

55. The notice speaks for itself as to its contents.

56. Denied that BSQUARE threatened any suppliers. Admitted that BSQUARE asserted its rights to its intellectual property. Denied that BSQUARE misstated the terms of the Agreement. The letters speak for themselves as to their contents.

57. Denied that BSQUARE threatened any suppliers. The letters speak for themselves as to their contents.

58. Admitted as to the first three sentences. Denied that BSQUARE's engineers were underutilized or that they misrepresented the time spent on Data Evolution work.

59. The letter speaks for itself as to its contents. The report speaks for itself as to its contents.

60. The report speaks for itself as to its contents. Admitted that BSQUARE never completed the project and denied that thousands of additional hours would be necessary to complete it.

61. Denied.

62. Denied.

63. BSQUARE lacks knowledge as to Data Evolution's projections. Denied that BSQUARE is liable for any lost profits.

64. BSQUARE lacks knowledge as to any contracts by Data Evolution with third-parties. Denied that BSQUARE is liable to Data Evolution.

65. Denied.

## COUNT I

66. BSQUARE repeats its responses to paragraphs 1 through 65.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

## COUNT II

71. BSQUARE repeats its responses to paragraphs 1 through 70.

72. Denied.

73. Denied.

74. Denied.

## COUNT III

75. BSQUARE repeats its responses to paragraphs 1 through 74.

76. Denied.

77. The Agreement speaks for itself as to its contents.

78. Denied.

79. The letter speaks for itself as to its contents. The last sentence is denied.

80. The letter speaks for itself as to its contents. The last sentence is denied.

81. The Agreement speaks for itself as to its contents. The last three sentences are denied.

82. The letter speaks for itself as to its contents. Denied that BSQUARE is improperly asserting rights to the intellectual property of others.

83. Admitted that BSQUARE claims that a battery specification for a three cell Moli Energy Lithium Ion smart battery pack is BSQUARE IP. Admitted that Data Evolution is precluded from using cells manufactured by Moli, which is a battery cell manufacturer. Admitted that the Purchase Request BSQUARE submitted for Rosslare stated: "Rosslare America will design and supply the CLIO NXT battery pack, including battery cells, circuit board and mechanics." Admitted that the battery pack was designed and produced by Rosslare, not BSQUARE. The terms of the Purchase Request speak for themselves. Denied that BSQUARE had no relationship with Rosslare. BSQUARE lacks sufficient information as to whether Rosslare was under contract with Data Evolution and whether Data Evolution paid

Rosslare directly for its work. Admitted that the parties never intended that BSQUARE would have any rights to Rosslare's work.

84. Admitted as to the first sentence. Denied that BSQUARE has breached the Agreement. The Agreement speaks for itself as to its contents.

85. Denied that the flex cable to which item 4 of BSQUARE's claimed I.P. was based on the original flex cable design supplied by Data Evolution. Denied that the changes to the cable are derivative work based on Pre-Existing Work of Data Evolution and third-party intellectual property and derivative work. Admitted that on April 21, 2005, Data Evolution authorized a Purchase Request for Flex Interconnect Technologies to produce 20 flex cables for $1,800 plus $1,000 for tooling and test. Denied that BSQUARE claims it owns the cables Flex produced, but by way of further answer BSQUARE asserts that it owns the cable design that was used by Flex Interconnect Technologies to produce the cables.

86. Admitted that BSQUARE asserts that tooling documentation related to modifications to the molds and other tooling used for manufacturing the Clio plastic components is owned by BSQUARE. Admitted that the molds are Pre-existing Work of Data Evolution and its affiliates. Denied that any documents showing changes, modifications or additions to support the Data Evolution molds are derived from Data Evolution Pre-existing Work and do not belong to BSQUARE, but admitted that some documents showing changes, modifications or additions to support the Data Evolution molds are derived from Data Evolution Pre-existing Work and do not belong to BSQUARE . Admitted that BSQUARE's letter to Cascade Quality Molding claims that BSQUARE is the exclusive owner and has the sole right to use the Clio NXT Mechanical Tooling Files modified or produced by Synapse. Admitted that BSQUARE claims

to be the exclusive owner of material produced by Synapse, not BSQUARE, and denied that such was a derivation of Data Evolution's Pre-existing Work.

87. Admitted that the Clio Architecture Specification, (item 11) and Clio NXT Specification (item 12) were based in part on information Data Evolution gave BSQUARE through emails, files, phone calls and face-to-face meetings. Admitted that some of these items are derived from Pre-existing Work of Data Evolution, including the original specs for the Clio NXT, which were sent to BSQUARE in June, 2004. By way of further answer, BSQUARE developed the two Specifications primarily from scratch or using its own work product. Therefore, not all of the items are derived from Pre-existing Work of Data Evolution.

88. The list speaks for itself as to item 13. Admit that these materials were developed based on Pre-existing Work supplied by Data Evolution in the form of files, drawings, etc.

89. The list speaks for itself as to item 14. Denied that a majority of the components for the prototypes were supplied by Data Evolution. Denied that the prototypes are a derivative of the original Clio units, which are Pre-existing Work.

90. Denied that BSQUARE breached the Agreement. The Agreement speaks for itself as to its terms.

91. Admitted that the first two categories of purported BSQUARE I.P. are the main board's schematics, board files and physical design of the Clio and Cathena. Denied that the physical layout of the Clio main board is based on Data Evolution supplied files. Denied that those original files, Gerbers and assembly information also included such as keyboard, flex cable, I/O ports, PMCIA circuits, etc. Denied that while certain ports were moved or added, this was a modification of the original Data Evolution board. Denied that given Data Evolution's sole ownership of the physical layout of the board design under para. 5.1.3 and ownership rights

in Pre-existing Work and work derived therefrom, BSQUARE does not own the board schematics, board files and physical design information it claims to own in its July 15, 2005 letter and July 19, 2005 letter to BreconRidge.

92.  The email and Purchase Request speak for themselves as to their terms.  Denied that Data Evolution had a plain right under Section 5.1.3 to the layout work performed by West Coast.  Admitted that BSQUARE claims that the "LED flex schematic and layout" done by West Coast Design is BSQUARE IP.

93.  Denied.

94.  Denied.

95.  Denied.

## COUNT IV

96.  BSQUARE repeats its responses to paragraphs 1 through 95.

97.  Denied.

98.  Denied.

99.  Denied.

100.  Denied.

## FIRST DEFENSE

BSQUARE is excused from performing by Data Evolution's prior material breach of contract.

## SECOND DEFENSE

Data Evolution fails to state a cause of action for tortuous interference with contract.

## THIRD DEFENSE

Data Evolution fails to state a cause of action for fraud.

**FOURTH DEFENSE**

Data Evolution fails to plead fraud with particularity.

**FIFTH DEFENSE**

Data Evolution's counterclaims are barred by its unclean hands.

**SIXTH DEFENSE**

Data Evolution's counterclaims are barred by waiver, estoppel and/or acquiescence.

WHEREFORE BSQUARE prays this Honorable Court to grant it judgment in its favor and against Data Evolution on its counterclaim, together with costs, attorneys' fees and other relief that the Court may deem proper.

Respectfully submitted,

/s/ Jonathan L. Parshall
Jonathan L. Parshall, ID # 3247
MURPHY SPADARO & LANDON
1011 Centre Road, Suite 210
Wilmington, Delaware 19805
Telephone: (302) 472-8106
Facsimile: (302) 472-8135
e-mail: jonp@msllaw.com
Attorneys for Plaintiff
BSQUARE Corporation

Date:   February 16, 2006

## CERTIFICATE OF SERVICE

I, Jonathan L. Parshall, do hereby certify that on this 16th day of February 2006, I electronically filed **BSQUARE CORPORATION'S REPLY TO COUNTERCLAIM** OF **DATA EVOLUTION CORPORATION** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Bruce E. Jameson, Esq.
Prickett Jones & Elliott
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

                                              /s/ Jonathan L. Parshall
                                              Jonathan L. Parshall, ID # 3247
                                              MURPHY SPADARO & LANDON
                                              1011 Centre Road, Suite 210
                                              Wilmington, Delaware 19805
                                              Telephone:  (302) 472-8106
                                              Facsimile: (302) 472-8135
                                              e-mail: jonp@msllaw.com
                                              Attorneys for Plaintiff
                                              BSQUARE Corporation